UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CAROLYN MASON, individually and as
Parent and Natural Guardian of A.D.,

                       Plaintiff,                        **MEMORANDUM & ORDER**
                                                                     20-CV-4010 (PKC) (SJB)

             - against -

RICHARD CARRANZA, in his official
capacity as Chancellor of the New York City
Department of Education, and NEW YORK
CITY DEPARTMENT OF EDUCATION,

                       Defendants.
-----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Carolyn Mason commenced this action individually and as parent and natural guardian of her minor son, A.D., pursuant to the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. §§ 1400 *et seq*, seeking review of a New York State Review Officer's ("SRO") decision to affirm an Impartial Hearing Officer's ("IHO") denial of Plaintiff's challenge to her son's Individualized Education Plan ("IEP") for the 2018–19 school year. (Dkt. 46.)  On September 22, 2023, the Court denied Plaintiff's motion for summary judgment, granted Defendant's cross-motion for summary judgment, and affirmed the SRO's decision. *See Mason v. Carranza*, No. 20-CV-4010 (PKC), 2023 WL 6201407, at *14 (E.D.N.Y. Sept. 22, 2023) ("Summary Judgment Order").  Presently before the Court is Plaintiff's motion for reconsideration of the Court's Summary Judgment Order.  For the reasons stated herein, Plaintiff's motion is denied.

**BACKGROUND**

I. **Relevant Factual Background**

The Court assumes the parties' familiarity with the facts in this case and therefore recites only those facts relevant to this decision.[1] Plaintiff is the parent and natural guardian of A.D., who is diagnosed with, among other things, cerebral palsy, intractable epilepsy, cortical vision impairment, microcephaly, and asthma. (Dkt. 41, at 1.)

New York State must make a "free appropriate public education" ("FAPE") available to all children residing in the state with one or more qualifying disabilities in order to receive federal funding under the IDEA. 20 U.S.C. § 1412(a)(1)(A). "To provide a FAPE to each student with a disability, a school district must develop an IEP that is 'reasonably calculated to enable the child to receive educational benefits.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)). Prior to the start of every school year, an "IEP team" for each student—known as a student's Committee on Special Education ("CSE") and consisting of the child's parent(s), teachers, school district representatives, and others—meets to create the student's IEP for the upcoming school year. *Melendez v. Porter*, No. 21-CV-579 (NGG) (LB), 2023 WL 4362557, at *3 (E.D.N.Y. July 6, 2023) (adopting report and recommendation) (citations omitted).

Plaintiff unilaterally placed A.D. at the International Academy of Hope ("iHOPE") for the 2017–18 school year (R. 964),[2] and filed a Due Process Complaint ("DPC") in the state

---

[1] A detailed description of the factual and procedural history of this case can be found in the Court's Memorandum & Order denying Plaintiff's Motion for Summary Judgment. (*See* Summary Judgment Order at 5–13).

[2] All references to "R." refer to the certified Administrative Record. (*See* Dkt. 22.) The Administrative Record is Bates-stamped with "Mason OSR Record [page number]" and the Court's

administrative system, arguing that the DOE did not provide A.D. with a FAPE for the 2017–18 school year. (*Id.*) While the final decision on that administrative proceeding was still pending, A.D.'s CSE met on March 15, 2018 and created his 2018–19 IEP. (Dkt. 40, at 3; R. 8, 1246.) Eight days later, on March 23, 2018, IHO Israel S. Wahrman ("IHO Wahrman") issued a decision ruling that A.D.'s 2017–18 IEP did not offer him a FAPE. (R. 968–969.) Following IHO Wahrman's decision, however, Plaintiff allegedly sent a letter on April 20, 2018 requesting that the CSE reconvene, but the receipt of this letter remains disputed. (Dkt. 56, at 8; R. 1088–1099.) On June 21, 2018, Plaintiff sent the DOE a ten-day notice, indicating that she intended to unilaterally enroll A.D. at iBRAIN, a newly-opened breakaway school from iHOPE. (R. 1090.) On July 9, 2018, Plaintiff, through counsel, filed a DPC arguing that the DOE had failed to provide a FAPE to A.D. in the 2018–19 IEP. (R. 898.) IHO Suzanne M. Carter ("IHO Carter") issued a decision denying Plaintiff's challenge (*see* R. 56–75), and SRO Sarah Harrington ("SRO Harrington") affirmed IHO Carter's decision (*see* R. 6–29).

## II.     Relevant Procedural Background

Plaintiff commenced this action on August 27, 2020, seeking review of SRO Harrington's decision affirming IHO Carter's denial of Plaintiff's challenge to her son's IEP for the 2018–19 school year. (Dkt. 46.) On August 18, 2022, Defendants filed their cross-motion for summary judgment (Dks. 40–43), and Plaintiff filed her motion for summary judgment on August 19, 2022 (Dkts. 44–46) and her reply on August 20, 2022 (Dkt. 47). On September 22, 2023, the Court denied Plaintiff's motion for summary judgment, granted Defendant's cross-motion for summary judgment, and affirmed the SRO's decision. (*See* Summary Judgment Order.) On October 23,

---

citations herein use the Bates page numbers rather than the internal pagination of the constituent documents.

3

2023, Plaintiff filed a "motion to alter or amend a judgment under Fed. R. Civ. P. 59(e), a motion for relief from a judgment or order under Fed. R. Civ. P. 60(b), and a motion for reconsideration under Local Civil Rule 6.3 motion for reconsideration" (Dkt. 56, at 1), both of which the Court now rules on.

## LEGAL STANDARD

A motion for reconsideration pursuant to Local Civil Rule 6.3 "is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or [O]rder." *Pall Corp. v. 3M Purification, Inc.*, Nos. 97-CV-7599 (PKC), 03-CV-92 (PKC), 2015 WL 5009254, at *1 (E.D.N.Y. Aug. 20, 2015). The standard governing a motion for reconsideration under Local Civil Rule 6.3 is "identical" to the standard applicable to a motion to amend or alter a judgment under Federal Rule of Civil Procedure 59(e). *Arnold v. Geary*, 981 F. Supp. 2d 266, 268–69 (S.D.N.Y. 2013), *aff'd*, 582 F. App'x 42 (2d Cir. 2014). This motion was timely filed under Rules 59(e) and 60(b).[3] Further, this Court retains its jurisdiction to rule on this motion notwithstanding Plaintiff's Notice of Appeal filed on October 25, 2023. *See Basciano v. Lindsay*, No. 07-CV-421 (NGG) (RML), 2008 WL 1700442, at *1 (E.D.N.Y. Apr. 9, 2008)

---

[3] Even though Local Rule 6.3 provides that a notice of reconsideration or re-argument of a court order shall be served within 14 days after the entry of the judgment, Rule 59(e) permits a party to seek reconsideration of a court's judgment so long as the party files its "motion to alter or amend a judgment . . . no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Most courts have found that Local Rule 6.3 does not supplant the time limit applicable to motions brought under 59(e) since Local Rule 6.3 does not apply if the Court or a statute or rule "otherwise provide[s]." Loc. Civ. R. 6.3; *Levitant v. Workers Comp. Bd. of N.Y.*, No. 16-CV-6990 (ER), 2019 WL 5853438, at *2 n.3 (S.D.N.Y. Nov. 8, 2019). Here, Plaintiff filed her motion for reconsideration on October 23, 2023, within 28 days of the Court's judgment entered on September 25, 2023. The Court therefore deems Plaintiff's motion for reconsideration to be timely filed.

("[W]here, as here, the notice of appeal is filed while a timely filed Rule 59(e) motion is pending, the trial court retains jurisdiction over the post-judgment motion, and the notice of appeal does not become effective until entry of an order disposing of the Rule 59(e) motion.").

Rule 60(b) allows courts to relieve a party from a final judgment or order on the basis of several specified circumstances, including "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . ; or (6) any other reason justifying relief." Fed. R. Civ. P. 60(b). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Moreover, such a motion will not be granted absent the demonstration of "extraordinary circumstances." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (explaining that Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances" (internal quotation marks omitted)). A motion for reconsideration "is not a vehicle for re[-]litigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

### DISCUSSION

After considering Plaintiff's arguments in her latest submissions, the Court finds that Plaintiff has failed to provide any basis for reconsideration of the Court's dismissal of this case.

Plaintiff does not present any controlling law or factual matters that the Court overlooked in its Summary Judgment Order. Plaintiff puts forward four grounds for reconsideration: (1) the Court erred in finding that A.D.'s 2018–19 IEP was procedurally adequate, (2) the Court erred in finding that the 2018–19 IEP was substantively adequate, (3) the Court erred by not considering policies of "cooperative federalism" in its decision, and (4) the Court showed bias by including a contextual footnote about iBRAIN in the Summary Judgment Order. The Court considers each of these arguments in turn.

I.      **Plaintiff's Procedural Arguments Do Not Warrant Reconsideration**

First, Plaintiff argues that IHO Wahrman's decision regarding the 2017–18 IEP, wherein he directed the DOE to "modify AD's IEP, within two weeks of receipt of this order, to make [] traumatic brain injury the classification and a 6-1-1 class ratio at a nonpublic school the program recommendation" (R. 968), triggered a mandatory obligation for A.D.'s CSE to reconvene a meeting and change his 2018–19 IEP. Plaintiff raised the same argument before the Court in her moving papers on summary judgment. (*Compare* Dkt. 56, at 10 ("[T]he DOE actively ignored IHO Wahrman's mandate to modify A.D.'s IEP recommendations"), *with* Dkt. 46, at 17 ("[T]he CSE never reconvened and ignored IHO's Wahrman's clear directives.").) Plaintiff contends that an "unappealed order [by IHO Wahrman] constitutes an agreement," and that "a mediation agreement . . . [under] New York law requires that the CSE immediately amend the student's IEP." (Dkt. 56, at 11); 8 N.Y.C.R.R. § 200.5(h)(3).

In its Summary Judgment Order, the Court considered this argument in detail, quoted the underlying administrative proceeding at length, and ultimately affirmed SRO Harington's decision denying Plaintiff's claim. Specifically, the Court noted that: "Plaintiff herself admitted during the underlying administrative proceedings that the compliance—or lack thereof—with IHO Wahrman's decision regarding the 2017–18 IEP had no bearing on the 2018–19 IEP." (Summary

6

Judgment Order, at 18 (citing R. 656–57).)  It is well-settled that IEPs for a previous school year are not binding on the following school year.  *See Carrillo v. Carranza*, No. 20-CV-4639 (CM), 2021 WL 4137663, at *14 n.8 (S.D.N.Y. Sept. 10, 2021) ("It is not insignificant that IHO Carter herself – the author of 'the roadmap' – did not consider her decision relating to 2017-18 to bind her in any way with regard to 2018-19, but instead rendered an entirely different decision for that year's IEP, after listening to days of evidence at a new and different impartial hearing – one at which the district appears to have cured some of the defects in its presentation of the previous year."); *J.R. v. N.Y.C. Dep't of Educ.*, 748 F. App'x 382, 386 (2d Cir. 2018) (finding that "[w]hether the DOE offered [the student] an appropriate placement in other years 'makes no difference' to the question of whether the IEP provided a FAPE in 2013–14" (quoting *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 67 (2d Cir. 2000))).  Thus, as the Court previously ruled, IHO Wahrman's decision regarding the 2017–18 IEP, even when unappealed, has no bearing on the IEP for the 2018–19 school year.

       Nor does the failure to convene a CSE meeting with a district physician constitute the denial of a FAPE.  As the Court previously ruled, the SRO's decision that the CSE for the IEP meeting held in March 2018 was properly composed.  (*See* Summary Judgment Order, at 16.)  Plaintiff now argues, for the first time before this Court,[4] that the ten-day notice she sent to the DOE on June 21, 2018—in which she asserted that the CSE had failed to include a district

---

[4] This argument can be rejected on procedural grounds alone. *Analytical Surveys, Inc.*, 684 F.3d at 52 (explaining that a reconsideration motion "is not a vehicle for re[-]litigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotations omitted)); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 292 (E.D.N.Y. 2013) ("Plaintiffs may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing." (alteration and citation omitted)).

physician—should have been viewed as a request for a new meeting. SRO Harrington considered this argument in the underlying administrative proceeding:

> In the June 21, 2018 letter the parent asserted that the district "ha[d] not conducted an annual IEP for this student" due to the failure to include a district physician at a CSE meeting, and requested that the CSE schedule a "Full Committee Meeting at a mutually agreeable date and time to allow for all mandated members of the IEP team to participate." By letter to the parent dated August 2, 2018, the CSE chairperson acknowledged the parent's June 2018 notice of unilateral placement and indicated that the CSE's March 2018 recommendation was appropriate to meet the student's educational needs. Although the parent's June 2018 notice of unilateral placement could be viewed as another request for the CSE to reconvene, absent additional information about how the student's needs had changed since the March 2018 CSE meeting, for the reasons described above this does not result in a denial of a FAPE.

(*See* R. 28 (internal citations omitted).) The Court accords SRO Harrington's decisions the deference they are owed and affirms her finding. *See Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) ("Deference is particularly appropriate when . . . the state hearing officers' review has been thorough and careful."). Plaintiff further relies, for the first time before this Court,[5] on *Davis v. Banks*, a case where the parent's request for a school physician was disregarded on multiple occasions and the parent herself was excluded from the CSE meeting. *See Davis v. Banks*, No. 21-CV-3265 (PKC) (PK), 2023 WL 6214107, at *13 (E.D.N.Y. Sept. 25, 2023). But here, SRO Harrington previously found—and the Court agreed—that the CSE meeting held in March 2018 "had timely occurred and Plaintiff had participated fully at that meeting." (*See* Summary Judgment Order, at 16; R. at 27–28.) This is especially true when, unlike in *Davis*, the SRO here found no evidence in the record that Plaintiff had requested the attendance of a physician prior to the March 2018 meeting. (R. 18.) So, as before, the Court rejects Plaintiff's procedural challenge to the CSE meeting.

---

[5] This new argument can similarly be rejected on procedural grounds alone for the same reasons as above. *Analytical Surveys, Inc.*, 684 F.3d at 52.

Finally, Plaintiff's argument that the DOE should not have used a 2015 psychological evaluation at the March 2018 meeting was also previously raised before this Court. (*See* Dkt. 46, at 16.)  The Court deferred to the SRO and IHO's evaluation of the record and expert testimony, and agreed that the CSE had sufficient current information when creating A.D.'s IEP. (*See* Summary Judgment Order, at 16–17.)  Indeed, Plaintiff herself conceded that using the 2015 psychological evaluations "technically met the statutory requirements." (*See* Dkt. 56, at 13.) Plaintiff thus does not present any procedural issues of fact or law that the Court overlooked in its Summary Judgment Order.

## II.     Plaintiff's Substantive Arguments Do Not Warrant Reconsideration

Plaintiff alleges that the Court erred in failing to find that the DOE substantively denied A.D. a FAPE for the 2018–19 school year because (1) the CSE changed A.D.'s disability classification to "multiple disabilities" from "traumatic brain injury," (2) the CSE recommended a class size of 12:1+4 instead of the New York regulation-mandated 6:1+1 class size for students with "highly intensive" management needs, and (3) the Court overlooked the fact that the IEP for 2018–19 was deemed sufficient by IHO Carter despite containing the same recommendations as the inadequate 2017–18 IEP. (*See* Dkt. 56, at 14–15.)

Plaintiff raised the same arguments related to A.D.'s disability classification, almost verbatim, in her summary judgment papers. (*Compare* Dkt. 46, at 17–18, *with* Dkt. 56, at 16–17.) The Court, in affirming SRO Harrington's decision that A.D.'s disability classification did not deprive him of a FAPE, engaged in a thorough review of the iBRAIN Director of Special Education's testimony, IHO Carter's own conclusions that "multiple disabilities" was a better classification for A.D. than "traumatic brain injury," as well as case law stating that disability classification is generally immaterial to whether a FAPE was denied. (*See* Summary Judgment Order, at 19–20 (citing *Carrillo*, 2021 WL 4137663, at *15; *M.R. v. Orangetown Ctr. Sch. Dist.*,

9

No. 10-CV-1800 (CS), 2011 WL 6307563, at *9 (S.D.N.Y. Dec. 16, 2011); *Polanco v. Porter*, No. 21-CV-10176 (JGK), 2023 WL 2242764, at *6 (S.D.N.Y. Feb. 27, 2023)).)

Similarly, the Court both considered and rejected Plaintiff's arguments related to A.D.'s class size. (*See* Summary Judgment Order, at 21–22.) New York regulations require a maximum class size of 6:1+1 for individuals with "highly intensive" management needs. 8 N.Y.C.R.R. § 200.6(h)(4)(ii)(a). A different regulation, however, requires that someone like A.D. who is classified as having "severe multiple disabilities" and needing an educational program consisting primarily of habilitation and treatment be placed in a classroom capped at a maximum of 12 students, one teacher, and four other adults (12:1+4). *Id*. § 200.6(h)(4)(iii). In *Carrillo*, the court considered a similar situation where a child fell into both categories, ultimately concluding that the SRO "resolved the discrepancy between two differing regulations that are equally applicable to this particular child by looking to [the child's] unique characteristics and needs." *Carrillo*, 2021 WL 4137663, at *16. SRO Harrington's conclusion that A.D. was better suited for a 12:1+4 class size also accounted for his unique characteristics and needs, for example, by noting that the 6:1+1 ratio "does not have the supplementary school staff needed to work with [A.D.]." (R. 65–66.) The Court found that this decision was "supported by a preponderance of the evidence." (*See* Summary Judgment Order, at 21–22.)

Finally, Plaintiff's argument highlighting the inadequacy of the 2017–18 IEP is not sufficient for demonstrating that the 2018–19 IEP did not constitute a FAPE. (*See* Dkt. 56, at 14–15.) As the Court stated in its September 22, 2023 decision, "SRO Harrington and IHO Carter properly did not factor in IHO Wahrman's 2017–18 decision in adjudicating Plaintiff's DPC as to

A.D.'s 2018–2019 IEP, and Plaintiff's reliance on that decision in this action is entirely misplaced." (Summary Judgment Order, at 19.)

### III.     Plaintiff's Cooperative Federalism Argument Does Not Warrant Reconsideration

Next, Plaintiff asserts that the Court's decision "neglects the cooperative federalism contemplated by IDEA," which "invites the State to do even better for [the] parties" and "go above and beyond [IDEA's] basic requirements." (*See* Dkt. 56, at 18–19.)  "When the District Court denied the parent's argument that multiple due process regulations amounted to a denial of FAPE, it dismissed the importance of added protection provided by the State . . . even though the federal statute does not require them." (*Id.*)  As a procedural matter, to the extent that Plaintiff is attempting to present this case under a new theory of legislative history and intent, such arguments are not appropriate upon a motion for reconsideration.  *See Analytical Surveys, Inc.*, 684 F.3d at 52 (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple).  In any event, this argument is without merit.  Although Plaintiff pleads that "the Court must give weight to the violations of State procedural protections in its analysis," (*see* Dkt. 56, at 21), she does not successfully establish that any New York state regulations were in fact violated. Accordingly, the Court does not grant reconsideration on this basis.

### IV.     Plaintiff's Bias Argument Does Not Warrant Reconsideration

Finally, the contextual footnote in the Summary Judgment Order describing the "mass exodus of students from iHOPE to iBRAIN," (*see* Summary Judgment Order, at 8 n.7), which Plaintiff argues demonstrates the Court's bias against her, does not sufficiently give rise to such an "appearance of impropriety" so as to grant a motion for reconsideration.  28 U.S.C. § 455(a) states that "[a]ny . . . judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  In determining whether this statute requires

11

recusal, the standard is "objective reasonableness, whether 'an objective disinterested observer fully informed of underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 149 (S.D.N.Y. 2012) (quoting *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008)). Further, to establish recusal, "[m]ovants must overcome a presumption of impartiality, and the burden for doing so is substantial." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. Int'l Union*, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004) (quotations omitted). A single contextual footnote, which the Court explicitly stated was "irrelevant to [its] analysis," is insufficient to meet this substantial standard. Indeed, none of the Court's reasoning justifying its own conclusions relied on or referred back to the footnote in question. Lastly, the Court is not alone in taking notice of this phenomenon relating to iHOPE and iBRAIN, as multiple other judges and courts have similarly commented on this matter. (*See* Summary Judgment Order, at 8 n.7 (citing *Ventura de Paulino*, 959 F.3d at 528–29; *Ferreira v. N.Y.C. Dep't of Educ.*, Nos. 19-CV-2937 (JMF), 19-CV-8519 (JMF), 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020)).)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied. Accordingly, this matter remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 1, 2024
      Brooklyn, New York